IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GINNY AHUJA,

        Plaintiff,

                                CIVIL ACTION NO.

v.                              1:10-CV-1038-JEC

CUMBERLAND MALL, LLC, MILLARD
MALL SERVICES, INC., JOHN DOE,
AND XYZ CORP.,

        Defendant.

## ORDER AND OPINION

This case is before the Court on defendant Millard's Motion for Summary Judgment [30], defendant Cumberland's Motion for Summary Judgment [31], defendant Millard's Motion to Exclude the Testimony of Ruston Hunt [52], and defendant Cumberland's Motion to Join in the Motion to Exclude [56]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Millard's Motion for Summary Judgment [30] should be **GRANTED in part** and **DENIED in part**, Cumberland's Motion for Summary Judgment [31] should be **GRANTED in part** and **DENIED in part**, Millard's Motion to Exclude [52] should be **GRANTED in part** and **DENIED in part**, and Cumberland's Motion to Join in the Motion to Exclude [56] should be **GRANTED as unopposed**.

## BACKGROUND

This is a premises liability case arising out of plaintiff's slip and fall at Cumberland Mall in September 2009. Defendant Cumberland Mall, LLC ("Cumberland") is the owner of the premises where the fall occurred. (Compl. at ¶ 5, attached to Notice of Removal [1].) At the time of plaintiff's fall, defendant Millard Mall Services, Inc. ("Millard") was responsible for janitorial and cleaning services on the premises. (*Id.* at ¶ 6.) Plaintiff sued both defendants in Gwinnett County State Court to recover for injuries sustained in her fall. (*Id.* at ¶¶ 1-2.) With Cumberland's approval, defendant Millard removed the case to this Court pursuant to 28 U.S.C. § 1332. (Notice of Removal [1] at ¶ 8.)

The relevant facts underlying plaintiff's fall are as follows. It was drizzling at the time of plaintiff's accident, but not raining heavily. (Pl.'s Dep. [36] at 36-38.) Plaintiff entered the mall through a covered side entrance adjacent to a covered parking deck. (*Id.* at 33-34, 38.) Immediately inside the doors where plaintiff entered the mall, there was a large carpet. (*See* Video [34], attached to Johnson Aff. [32] at Ex. A.) A freestanding sign was located at the edge of the carpet, directly in front of the doors. (*Id.* and Expert Report of RM Hunt ("Hunt Report") [57] at 1-2, 8.) A wet-floor cone was placed just inside and to the right of the doors, up against the wall. (*Id.*)

2

Based on a surveillance video that was taken at the time of the fall, plaintiff walked through the doors and slightly altered her course to avoid hitting the freestanding sign. (*Id.*) As she entered the mall, the wet-floor cone was located on the floor to plaintiff's right. (*Id.*) It is hard to tell from the video whether plaintiff noticed the wet-floor cone, but at her deposition plaintiff testified that she did not remember seeing either the cone or the sign prior to her accident.[1] (Pl.'s Dep. [36] at 51-52, 77, 133.) After stepping to the side of the sign and off of the carpet, plaintiff almost immediately slipped and fell. (*Id.*)

After her fall, plaintiff noticed a wet substance on her hands and clothes. (*Id.* at 61-63.) Plaintiff cannot remember where the substance came from, or the amount of the substance that was on the floor at the time of her accident. (*Id.*) Apparently, plaintiff's recall of this detail was impaired by the fact that she was in excruciating pain after the fall, having shattered her elbow. (*Id.*) Defendants suggest that the substance was water, which plaintiff tracked into the store herself and which caused her fall. (Def. Millard's Br. in Supp. of Mot. for Summ. J. [30] at 14 and Def. Cumberland's Reply [53] at 6.)

---

[1] Defendants argue that the video shows plaintiff looking at the warning cone as she walked by it. (*See* Millard's Br. in Supp. of Mot. for Summ. J. [30] at 2.) Having viewed the video, the Court does not agree.

3

Chris Bailey, a third party bystander who was walking behind plaintiff at the time of the accident, witnessed her fall. (Bailey Aff. [37].) Bailey states that he did not see the wet-floor cone as he walked into the mall, although he noticed water on the floor. (*Id.* at ¶¶ 3-5.) In fact, Bailey says that he only saw the cone as he was waiting for help to arrive for plaintiff. (*Id.* at ¶ 6.) Bailey explains that the reason he did not notice the cone as he entered the mall is that it was placed against the wall to the right of the doors. (*Id.* at ¶ 7.)

There is evidence that both the cone and the sign were misplaced at the time of plaintiff's accident. (Video [34] and Galvez Dep. [36] at 30-32, 37-39.) Per Millard's training, the sign should have been farther away from the entrance, and the cone should have been on the tile, just beyond the carpet. (Galvez Dep. [36] at 30-32, 37-39.) Moreover, a Millard staff member should have walked outside the door to ensure that the cone was visible to someone coming into the mall. (*Id.* at 32.) Immediately after plaintiff's accident, the Millard porter who was responsible for that area of the mall cleaned the carpet at the entryway and moved the cone to its proper location. (*Id.* and Video [34].)

Plaintiff contends that she sustained medical expenses and lost wages in excess of $100,000 as a result of her fall. (Compl. [1] at ¶¶ 11-12.) In her complaint, plaintiff seeks to recover those

4

expenses, in addition to damages for pain and suffering, punitive damages, and attorney's fees. (*Id.* at 8-9.) In support of her right to recovery, plaintiff asserts claims against defendants for negligence and premises liability. (*Id.* at ¶¶ 21-23.)

Following discovery, defendants filed motions for summary judgment on plaintiff's claims. (Def. Millard's Mot. for Summ. J. [30] and Def. Cumberland's Mot. for Summ. J. [31].) Both of those motions are presently before the Court. Also before the Court is defendant Millard's motion to exclude the testimony of plaintiff's expert Ruston Hunt, which defendant Cumberland has moved to join. (Def. Millard's Mot. to Exclude Expert Testimony [52] and Def. Cumberland's Mot. to Join [56].)

## DISCUSSION

### I.  Motion to Exclude Expert Testimony

In support of her claims, plaintiff relies on the report of human factors expert Ruston Hunt. (Hunt Report [57].) Hunt's report includes the following three opinions:

1.  An unreasonably dangerous situation existed at the entrance of Cumberland Mall on September 20, 2009.

2.  The mall management could and should have acted to eliminate the hazard, or at least mitigate the hazard by warning patrons of its existence.

3.  Plaintiff's own conduct and behavior did not contribute in any way to her fall.

5

(*Id.* at 11.)  Millard moves to exclude these opinions under Rule 702 of the Federal Rules of Evidence.[2]  (Def. Millard's Mot. to Exclude [52].)  Defendant Cumberland seeks to join Millard's motion to exclude [56].  As there is no opposition to Cumberland's motion to join [56], it is **GRANTED as unopposed.**

Plaintiff agrees with Millard's assessment of Ruston's three opinions cited above.  (Pl.'s Resp. to Mot. to Exclude [57] at 2-3.)  In her response to the motion to exclude, plaintiff concedes that these opinions are beyond the scope of Hunt's expertise.  (*Id.* at 2-3.)  Accordingly, the Court **GRANTS** Millard's motion to exclude [57] as to these specific opinions.

However, plaintiff still intends to rely on Hunt's more focused opinion that she was unable to perceive the water hazard or the wet-floor cone due to the placement of the freestanding sign.  (*Id.* at 4.)  Hunt notes that the cone was not directly in plaintiff's path as she entered the mall, and that plaintiff had to adjust her direction of travel to avoid the freestanding sign.  (*Id.*)  From

---

[2]  Millard also objects to Hunt's testimony because it is not supported by an affidavit or deposition as required by Rules 801 and 802.  (Def. Millard's Resp. to Pl.'s Statement of Material Facts [50] at ¶ 5.)  The Court overrules this objection.  Hunt's Report satisfies the requirements of the Rules of Civil Procedure.  *See* FED. R. CIV. P. 26(a).  Moreover, there are no issues regarding the authenticity of the report, nor any suggestion that defendants were unable to depose Hunt.  Indeed, Millard's motion extensively cites to Hunt's deposition.

6

these facts, Hunt concludes that plaintiff fixated on the sign and was unable to see the wet-floor cone or water on the floor. (*Id.*) According to plaintiff, Hunt is qualified to render this opinion, which is both reliable and relevant to the issues in the case. (Pl.'s Resp. to Mot. to Exclude [57] at 4.)

   A.   **Applicable Standard**

   Rule 702 of the Federal Rules of Evidence provides that:

   If scientific, technical, or other specialized knowledge
   will assist the trier of fact to understand the evidence
   or to determine a fact in issue, a witness qualified as
   an expert by knowledge, skill, experience, training, or
   education, may testify thereto in the form of an opinion
   or otherwise.

FED. R. EVID. 702.   Pursuant to Rule 702, expert testimony is admissible when (1) the expert is qualified to testify competently, (2) the expert's methodology is reliable, and (3) the expert's testimony will assist the trier of fact to understand the evidence or to determine a fact at issue in the case. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1309 (11th Cir. 1999). *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993).

   The *Daubert* Court emphasized the district court's "gatekeeping" role to ensure that scientific testimony is relevant and reliable before it is admitted as evidence. *Daubert,* 509 U.S. at 589-90. *See also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1342 (11th Cir. 2003)(noting the "emphasis the Supreme Court has placed

7

upon the district court's 'gatekeeping' role in the determination of whether expert evidence should be admitted"). *Daubert* applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999). Its overarching goal is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Under Rule 702, the proponent of expert testimony has the burden of showing that the testimony complies with *Daubert*. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1108 (11th Cir. 2005). To meet its burden as to Hunt, plaintiff must demonstrate that Hunt's proffered opinion satisfies each prong of Rule 702. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010). Assuming that plaintiff meets the basic requirements of Rule 702, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness" of Hunt's testimony. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). Rather, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible'" expert testimony. *Id.*

8

B.   **Analysis**

Defendants do not dispute that Hunt is qualified to give the limited opinion for which plaintiff proffers him. (Def. Millard's Reply [58].)   Hunt has an undergraduate degree in industrial engineering and a Ph. D. in mechanical engineering. (Hunt Resume [57] at Ex. B.)   For the past eight years, he has taught courses on human factors engineering at Southern Polytechnic State University, where he currently serves as Dean. (*Id.*)   Hunt has published numerous peer reviewed articles concerning human factors engineering. (*Id.*)   Hunt's research, education and experience in the field of human factors qualify him to offer an opinion on how a reasonable mall patron would perceive the site of plaintiff's accident. *See U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("expert status may be based on knowledge, skill, experience, training, or education")(internal quotations and emphasis omitted).

The Court also finds that Hunt's opinion is reliable. Hunt's analysis is based on his review of the surveillance video and an onsite inspection. (Hunt Report [57] at Ex. A.)   As evidenced by his report, Hunt's methods are in line with those commonly employed by others in his field. (*Id.*)   In addition, Hunt's theories can be tested, and have been subjected to peer review as a result of Hunt's extensive publications in the field. (*Id.*) *See Daubert,* 509 U.S. at 593-95 (including in a list of reliability factors whether the

9

theory at issue (1) can be tested, (2) has been subjected to peer review and publication, and (3) is generally accepted in the field).

In fact, defendants do not present any evidence to suggest that Hunt's methods are unreliable. Rather, defendants contend that Hunt's opinion is unsupported by the facts of the case because it contradicts plaintiff's deposition testimony that she did not recall seeing the freestanding sign. (Def. Millard's Reply [58] at 2-5.) That plaintiff did not recall seeing the sign does not necessarily foreclose the possibility that she altered her course to avoid it. Thus, Hunt's opinion is not necessarily inconsistent with plaintiff's testimony. In any case, to the extent defendants challenge the factual basis of Hunt's opinion, that is an issue that goes to the credibility and weight of his testimony, as opposed to its admissibility. *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). *See also Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001)(permitting an accounting expert to opine on forensic accounting issues based on "reasonable assumptions regarding the requirements of the applicable contracts").

Finally, the Court finds that Hunt's proffered opinion is relevant to plaintiff's negligence claim, because it bears on plaintiff's knowledge of the hazardous condition that allegedly caused her accident. *See Robinson v. Kroger Co.*, 268 Ga. 735, 737 (1997) (an invitee must exercise ordinary care for her personal

10

safety in order to recover on a premises liability theory) and *Allison,* 184 F.3d at 1309 (expert testimony is relevant if it will assist the trier of fact to understand the evidence or to determine a fact at issue in the case). Accordingly, Hunt's opinion concerning the placement of the freestanding sign and the wet-floor cone at the time of plaintiff's accident meets all of the requirements of Rule 702. The Court thus **DENIES** Millard's motion to exclude [52] with respect to that particular opinion.

## II. Motions for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who

11

fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion.  *Id.* at 323.  However, the movant is not required to negate his opponent's claim.  The movant may discharge his burden by merely "'showing'-- that is, pointing out to the district court--that there is an absence of evidence to support the non[-]moving party's case."  *Id.* at 325.  After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

12

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

**B.    Plaintiff's Premises Liability Claim Against Cumberland**

Under Georgia law, a premises owner owes a duty of reasonable care to its invitees, and can be held liable for its failure to exercise ordinary care to keep the premises safe. *Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (2009) and O.C.G.A. § 51-3-1.  To prevail on a premises liability claim, a plaintiff must show that she was injured by a hazard that the owner "should have removed in the exercise of ordinary care for the safety of the invited public." *Am. Multi-Cinema,* 285 Ga. at 444.  As applied to a slip and fall case, the plaintiff must present some evidence that:  (1) the defendant had actual or constructive knowledge of a hazard on the premises, and (2) the plaintiff, despite exercising ordinary care for her personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control. *Id*.

Ordinarily, findings concerning relative negligence and knowledge of a hazard are the province of the jury. *Robinson*, 268 Ga. at 748.  This means that:

> issues such as how closely a particular
> retailer should monitor its premises and
> approaches, what retailers should know about
> the property's condition at any given time, how
> vigilant patrons must be for their own safety

13

> in various settings, and where customers should
> be held responsible for looking or not looking
> are all questions that, in general, must be
> answered by juries as a matter of fact rather
> than by judges as a matter of law.

*Am. Multi-Cinema, Inc.*, 285 Ga. at 445. Summary judgment is thus only appropriate in cases where the evidence is "plain, palpable, and undisputed." *Robinson*, 268 Ga. at 748. This case does not fall into that narrow category. Accordingly, for the following reasons, the Court **DENIES** defendant Cumberland's motion for summary judgment [31] as to plaintiff's premises liability claim.

### 1.   Cumberland's Knowledge

Plaintiff has presented sufficient evidence to show that Cumberland had knowledge of a hazardous condition on its premises, which condition ultimately caused her fall. There is an incident report indicating that the mall floor was mopped fifteen minutes prior to plaintiff's fall. (Incident Report, attached to Pl.'s Resp. to Mot. for Summ. J. [37] at Ex. 2.) In addition, it is undisputed that a wet-floor cone was located near the mall entranceway at the time of the accident, although the cone was misplaced. (Video [34] and Galvez Dep. [36] at 30-32.) Based on these facts, a jury could infer actual and/or constructive knowledge of a hazardous condition, namely a wet floor, on the part of Cumberland. *See Mairs v. Whole Foods Mkt. Grp., Inc.*, 303 Ga. App.

14

638, 639 (2010)(by mopping the floor, Whole Foods is presumed to have knowledge of water on the floor).

    2.   <u>Plaintiff's Knowledge And Care</u>

Neither does the evidence conclusively demonstrate plaintiff's equal or superior knowledge of the hazard, or her failure to use reasonable care for her own safety. As an initial matter, the Court rejects Cumberland's suggestion that the surveillance video evidences a lack of care by plaintiff because it shows her walking straight ahead and not looking down at the floor. (Def. Cumberland's Br. in Supp. of Summ. J. [31] at 13-14.) Georgia law does not require a plaintiff to be on the lookout for hazards that are not likely to be present on the premises, including a floor that is wet because it was recently mopped. *Id.* Nor does the law demand that a plaintiff look continuously at the floor for any possible defects. *Robinson*, 268 Ga. at 743.

On the contrary, all that the law requires is that a plaintiff employ the same level of prudence as the ordinarily careful person in a similar situation. *Id.* Based on the evidence in the record, including the surveillance video and plaintiff's testimony, a jury might conclude that plaintiff's actions at the time of her fall meet that standard. *See Mairs*, 303 Ga. App. at 639 (denying Whole Food's motion for summary judgment where the plaintiff only noticed that the floor was wet after she fell). Particularly in light of the

bystander testimony concerning the placement of the wet-floor cone and the condition of the mall floor, a jury might find that plaintiff exercised reasonable care for her own safety under the circumstances. *Id.*

The Court likewise rejects Cumberland's argument that plaintiff had equal or superior knowledge of the hazard because (1) it was raining when plaintiff entered the mall and (2) a wet-floor cone was located at the mall entranceway. (Def. Cumberland's Br. [31] at 14-16.) In support of the first point, Cumberland cites a line of Georgia cases denying recovery for falls on "floors made wet by rain[y] conditions." *Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677, 680 (2006). The "rainy day" cases are not an exception to premises liability law, but rather an application of its well-settled principles. *See Helms v. Wal-Mart Stores, Inc.*, 806 F. Supp. 969, 973-975 (N.D. Ga. 1992) (discussing Georgia's rainy day slip and fall authority). During rainy weather, it is common knowledge that some water might accumulate at an entranceway where patrons are continuously passing in and out of the rain. *Id.* An invitee who falls under such conditions cannot recover from the premises owner, because the invitee should be just as aware as the owner of a potentially hazardous wet floor. *Id.*

Depending on the findings of the jury, Cumberland might prevail on its "rainy day" defense at trial. However, the record does not

16

support granting summary judgment on that ground.  There is a question of fact concerning whether the conditions outside caused or even contributed to the hazard that resulted in plaintiff's fall. Plaintiff testified that it was "drizzling" on the morning of her fall, but not raining hard. (*See* Pl.'s Dep. [36] at 36-38.)  As she recalled, her shoes were not wet when she walked into the mall. (*Id.* at 66.)  Moreover, none of the patrons seen entering the mall on the surveillance video are wearing rain gear or carrying an umbrella, suggesting that the rain had stopped by the time plaintiff reached the mall.  (Video [34].)

Even assuming that it was raining at the time of plaintiff's fall, plaintiff entered the mall through a covered entrance adjacent to a covered parking deck.  (*Id.* at 33-34, 38.)  Under the circumstances, it would not necessarily be "common knowledge" that the mall floor would be wet, particularly as plaintiff had to cross a large carpet before she reached the floor.  *See Dickerson v. Guest Serv. Co. of Virginia*, 282 Ga. 771, 773 (2007)(where stairs were connected to a covered portion of the premises, a reasonable person could presume that they would not be wet).  Finally, there is evidence suggesting that the floor was wet because it was mopped, not because it was raining outside.  (Incident Report [37] at Ex. 2.)

17

As to the wet-floor cone, there is evidence that the cone was not in its proper location at the time of plaintiff's fall. (Galvez Dep. [36] at 30-32 and Hunt Report [57] at 1-2, 8.)   Plaintiff testified that she did not see the cone prior to her fall, and neither did bystander Chris Bailey. (Pl.'s Dep. [36] at 51-52 and Bailey Aff. [37] at ¶ 4.)  Bailey explained that the reason he did not see the cone is that it was placed up against the wall. (Bailey Aff. [37] at ¶¶ 5-6.)  Furthermore, plaintiff's expert opines that plaintiff was not likely to notice the cone because she was distracted by the freestanding sign.  (Hunt Report [57] at 8-9.) It is thus unclear whether plaintiff was on notice of the wet floor hazard prior to her fall. *See Sutton v. Winn Dixie Stores, Inc.*, 233 Ga. App. 424, 427 (1998) (holding that a misplaced and unseen warning sign was not sufficient to place plaintiff on notice of the potential hazard).

   C.   **Plaintiff's Negligence Claim Against Millard**

        1.   Premises Liability

   As previously mentioned, a landowner owes its invitees a duty of care under O.C.G.A. § 51-3-1 to keep the premises safe.  Because this duty is derived from statute, it is non-delegable, even where a third party is contractually obligated to provide maintenance services on the premises.  *Johnson v. Kimberly Clark*, 233 Ga. App. 508, 510 (1998).  Thus, the duties imposed on a premises owner by

18

§ 51-3-1 are not applicable to an independent contractor that provides maintenance services on the premises. *Kelley v. Piggly Wiggly S., Inc.*, 230 Ga. App. 508, 509 (1997). *See also Greene v. Piedmont Janitorial Serv., Inc.*, 220 Ga. App. 743, 744 (1996)(Georgia's premises liability statute does not apply to an independent contractor).

Defendant Millard contends that it is an independent contractor, and is thus not subject to premises liability under § 51-3-1. (Def. Millard's Br. in Supp. of Mot. for Summ. J. [30] at 9.) Consistent with Millard's argument, the relevant contract provides that Cumberland and Millard "are independent contractors with respect to one another." (Maintenance Contract at ¶ 16, attached to Millard's Mot. for Summ. J. [30] at Ex. 3.) Furthermore, the contract expressly disavows any "agency, partnership, joint venture, co-employ[ment] or employment or other such relationship" between the parties. (*Id.*)

Plaintiff has not presented any evidence to contradict the plain language of the contract as to the relationship between Cumberland and Millard. The Court thus agrees that Millard is an independent contractor, with no liability under § 51-3-1. *See Perkins v. Compass Grp. Use, Inc.*, 512 F. Supp. 2d 1296, 1301 (N.D. Ga. 2007)(finding that the defendant was an independent contractor where the language of a service agreement clearly defined him as

19

such).  Accordingly, the Court **GRANTS** defendant Millard's motion for summary judgment [30] as to plaintiff's premises liability claim under § 51-3-1.

2.  <u>Duties Arising Out Of Millard's Contract</u>

Nevertheless, Millard may be liable to plaintiff for injuries arising from the negligent performance of Millard's duties under the maintenance contract.  *See Kelley*, 230 Ga. App. at 509 (an independent contractor has a "duty to use ordinary care in [its] floor cleaning and cleanup assignment").  All that is required to hold Millard liable for negligence under Georgia law is:  (1) a duty, (2) breach of the duty, and (3) injury to plaintiff as a result of the breach.  *See Womack v. Oasis Goodtime Emporium I, Inc.,* 307 Ga. App. 323, 328 (2010).  There is sufficient evidence on all three elements to avoid summary judgment on plaintiff's negligence claim against Millard.

Millard concedes that it was contractually obligated to warn mall patrons of potential hazards, such as wet floors.  (Def. Millard's Br. in Supp. of Mot. for Summ. J. [30] at 17-18 and Millard Contract at ¶ 1.B.)  As discussed above, there is evidence in the record suggesting that Millard's efforts in this regard were deficient.  (*See* Bailey Aff. [37] at ¶¶ 5-6, Galvez Dep. [36] at 30-32, and Hunt Report [57].)  Millard does not dispute that plaintiff was injured as a result of her fall.  Accordingly, Millard's motion

20

for summary judgment [30] as to plaintiff's negligence claim is **DENIED**.

D. <u>**Plaintiff's Remaining Claims**</u>

Both defendants also move for summary judgment on plaintiff's claims of negligent retention and supervision, punitive damages, and attorney's fees. (Def. Millard's Mot. for Summ. J. [30] at 19-23 and Def. Cumerland's Mot. Summ. J. [31] at 16-18.) Plaintiff fails to address these claims in her response. Accordingly the Court finds that plaintiff has abandoned her claims for negligent retention and supervision, attorney's fees and punitive damages, and **GRANTS** the motions for summary judgment [30] and [31] with respect to these claims. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned") and *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005)(Thrash, J.)("[p]laintiff's failure to respond to [the] legal arguments relating to a claim . . . constitutes abandonment of the claim").

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendant Millard's Motion for Summary Judgment [30], **GRANTS in part** and **DENIES in part** defendant Cumberland's Motion for Summary

21

Judgment [31], **GRANTS in part** and **DENIES in part** defendant Millard's Motion to Exclude the Testimony of Ruston Hunt [52], and **GRANTS as unopposed** defendant Cumberland's Motion to Join Millard's Motion to Exclude [56].

SO ORDERED, this 23rd day of September, 2011.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

22

AO 72A
(Rev.8/82)